UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NORRIS G. HOLDER, JR.,  )
          Movant,  )
            ) Criminal Case N0. 4:97-cr-00141-ERW
            ) Prior Civil Case No. 4:03-cv-00923-ERW
            )
            )
v.  )  **CAPITAL CASE**
            )
UNITED STATES OF AMERICA,  )
          Respondent.  )
            )

**MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255**

Movant, Norris G. Holder, Jr., through his undersigned counsel, hereby files

a motion to set aside the judgment against him on Count 2, in case number 97-cr-

00141-ERW, pursuant to 28 U.S.C. § 2255. As explained below, Mr. Holder's

conviction under 18 U.S.C. § 924(c) must be vacated in light of the Supreme

Court's recent decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).

**INTRODUCTION**

On March 26, 1998, Norris G. Holder, Jr., was convicted of one count of

bank robbery, in violation of 18 U.S.C. § 2113(a) and (e) (Count 1), and one count

of using or carrying a firearm during and in relation to a crime of violence,

specifically, bank robbery as charged in Count 1, in violation of 18 U.S.C. § 924(c)

(Count 2). Mr. Holder was sentenced to death on both counts, based upon

sentencing provisions specific to each statute of conviction. With respect to the § 924(c) conviction, he was sentenced to death under 18 U.S.C. § 924(j).

In 2015, the Supreme Court held in *Johnson v. United States*, 135 S. Ct. 2551 (2015), that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void for vagueness. That clause, the Court held, cannot constitutionally define a "violent felony" for purposes of the ACCA's sentence-enhancing provisions. *See Johnson,* 135 S. Ct. at 2557.

On June 24, 2019, the Supreme Court held in *Davis* that one of the two subsections of § 924(c) defining a "crime of violence" is also unconstitutionally void for vagueness. The Court extended the reasoning from *Johnson* to invalidate 18 U.S.C. § 924(c)(3)(B). *See Davis*, 139 S. Ct. at 2326-27. As explained more fully below, after *Davis,* federal bank robbery under § 2113(a) and (e) categorically fails to qualify as a "crime of violence." Therefore, Mr. Holder's § 924(c) conviction and its attendant death sentence are invalid.

The relevant portion of § 924(c) includes two alternative clauses defining "crime of violence." The first, § 924(c)(3)(A), is commonly referred to as the elements clause. It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The second, § 924(c)(3)(B), is commonly referred to as the residual clause. It applies to any felony "that, by its nature, involves a substantial risk that physical

force against the person or property of another may be used in the course of committing the offense."

This second definition, the residual clause, is now unconstitutional and void for vagueness. *See Davis*, 139 S. Ct. at 2336 ("We agree with the court of appeals that § 924(c)(3)(B) is unconstitutionally vague.").

The circuit courts that have considered *Davis* have held that it applies retroactively as a new rule of constitutional law, and it thus satisfies the requirements for a successive § 2255 habeas petition. *See United States v. Reece*, 2019 WL 4252238, at *4 (5th Cir. Sept. 9, 2019), as revised (Sept. 30, 2019) (holding that *Davis* created a new rule of constitutional law applicable retroactively); *United States v. Bowen,* 936 F.3d 1091, 1097–98 (10th Cir. 2019) ("We first conclude that the Supreme Court's ruling in *Davis* that § 924(c)(3)'s residual clause is void for vagueness is a new constitutional rule that is retroactive on collateral review."); *In re Hammoud*, 931 F.3d 1032, 1040 (11th Cir. 2019) ("[*Davis*] announced a new substantive rule of constitutional law in its own right, separate and apart from (albeit primarily based on) *Johnson* and *Dimaya*. Thus, Hammoud's present claim is a new *Davis* claim, not a *Johnson* or *Dimaya* claim."). Further, the Third Circuit has specifically granted applications to file successive § 2255 motions challenging § 924(c) convictions predicated, like Mr.

Holder's, on federal bank robbery. *See In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019).

These cases compel the same result in Mr. Holder's case. Because § 924(c)'s residual clause is void for vagueness, it cannot constitutionally define a "crime of violence" for purposes of a § 924(c) conviction. Furthermore, bank robbery under 18 U.S.C. § 2113(a) does not categorically qualify as a "crime of violence" under the remaining elements clause. This is because under § 2113(a), a person may accomplish bank robbery either through force, through intimidation, *or* by extortion. 18 U.S.C. § 2113(a). The statute thus sets forth the single crime of bank robbery, which may be accomplished through any of these three alternative means.

Because bank robbery may be accomplished through extortion, it fails to qualify as a categorical crime of violence. Extortion indisputably involves a threat of economic, not physical, harm, and does not involve the use, threatened use, or attempted use of violent physical force, as required to satisfy § 924(c)(3)(A). *United States v. Johnson*, 526 F. App'x 708, 711 (8th Cir. 2013) (citing *United States v. Sawyer*, 588 F.3d 548, 556 (8th Cir. 2009) (adopting the language of "employs or threatens to immediately employ physical force upon another person" for a crime of violence determination).

Intimidation, too, does not satisfy the elements clause. For although most courts, including the Eighth Circuit, have interpreted intimidation to require that

the person robbed reasonably infer a threat of bodily harm, the element is evaluated from the perspective of a reasonable person in the bank teller's position, and requires neither the use of violent physical force by the defendant nor any intent to intimidate. "Whether an act constitutes intimidation is viewed objectively, and a defendant can be convicted under section 2113(a) even if he did not intend for an act to be intimidating." *United States v. Kelley,* 412 F.3d 1240, 1244 (11th Cir. 2005); *see also United States v. Yackel,* 320 F.3d 818, 824 (8th Cir. 2003) (same). In other words, bank robbery by intimidation may be accomplished without the intentional use, attempted use, or threatened use of violent physical force required to satisfy the elements clause. *See United States v. Torres-Villalobos,* 487 F.3d 607, 615 (8th Cir. 2007); *see also Leocal v. Ashcroft,* 543 U.S. 1, 12-13 (2004). Therefore, bank robbery under § 2113(a) and (e) categorically fails to qualify as a "crime of violence" under § 924(c)(3)(A), and Mr. Holder's conviction under § 924(c) and its associated death sentence cannot stand.

Further, Mr. Holder is entitled to relief under 28 U.S.C. § 2255(h)(2) because *Davis* established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2); *United States v. Reece*, 2019 WL 4252238 (5th Cir. Sept. 9, 2019); *United States v. Bowen,* 936 F.3d 1091 (10th Cir. 2019);

*In re Hammoud*, 931 F.3d 1032 (11th Cir. 2019). Accordingly, Mr. Holder respectfully asks this Court to grant his § 2255 motion, vacate his § 924(c) conviction and his death sentence under § 924(j), and order that he be resentenced.

Below, Mr. Holder provides more detailed support for this motion.

## STATEMENT OF RELEVANT FACTS

### A.     **Conviction and Sentencing.**

In Case No. 97-cr-00141-ERW, Mr. Holder and a co-defendant, Billie Allen, were jointly charged in this Court with bank robbery, under 18 U.S.C. § 2113(a) (Count 1), and using or carrying a firearm during and in relation to a crime of violence, specifically bank robbery as charged in Count 1, in violation of 18 U.S.C. § 924(c) (Count 2). The government sought the death penalty against both defendants under 18 U.S.C. § 2113(e) for Count 1 and 18 U.S.C. § 924(j) for Count 2. This Court granted Mr. Allen's motion and severed the two men's cases for trial.

Allen was tried first, and he was convicted on both counts. Although the evidence overwhelmingly proved that Allen alone shot and killed the victim,  bank security guard Richard Heflin (and the government has long since conceded that this was the case), Allen's jury sentenced him to death only on the § 924(c) count and returned a life sentence on the bank robbery charge.

On March 26, 1998, Mr. Holder, too, was convicted both of the bank robbery and of the § 924(c) offense. His jury subsequently returned death sentences on both counts. This Court formally sentenced Mr. Holder to death on July 23, 1998.

**B.      Direct Appeal.**

Mr. Holder timely appealed to the Eighth Circuit, filing his notice on July 23, 1998. He raised several issues relating to the process of selecting his jury. He also argued that the jury should have been required to find he had a specific intent to kill the victim. He challenged the district court's interpretation of, and the constitutionality of, certain aggravating factors used against him. And he argued that certain photographs admitted into evidence were unduly prejudicial. The court of appeals rejected all of Mr. Holder's arguments and affirmed his convictions and death sentences. *United States v. Allen,* 247 F.3d 741 (8th Cir. 2001). The United States Supreme Court denied certiorari on June 9, 2003. *Holder v. United States,* 539 U.S. 916 (2003).

**C.      Previous § 2255 Motion.**

On June 8, 2004, Mr. Holder timely filed a motion for collateral relief under 28 U.S.C. § 2255. This Court docketed that motion under case number 03-cv-00923-ERW.

Mr. Holder's motion asserted that the government had failed to allege a statutory aggravating factor in the indictment, in violation of the Fifth Amendment, that the jury had improperly considered a statutory aggravator, and that trial counsel was ineffective in numerous respects. On July 22, 2008, this Court denied relief. *Holder v. United States,* 2008 WL 2909648 (E.D. Mo. Jul. 22, 2008). The court subsequently denied Mr. Holder's motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e). *Holder v. United States,* 2009 WL 5030785 (E.D. Mo. Dec. 14, 2009).

The Eighth Circuit affirmed the denial of relief on appeal. *Holder v. United States,* 721 F.3d 979 (8th Cir. 2013). On October 5, 2015, the United States Supreme Court denied certiorari. *Holder v. United States,* 136 S. Ct. 34 (2015).

**D.      *Johnson v. United States.***

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S. Ct. 2551. With *Johnson,* the Supreme Court overruled *Sykes v. United States,* 131 S. Ct. 2267 (2011), and *James v. United States,* 550 U.S. 192 (2007), and held that the ACCA's residual clause is too vague to provide adequate notice under the Due Process Clause of the Fifth Amendment.

*Johnson* held that imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process. Specifically, the Court concluded that "the indeterminacy of the wide-ranging inquiry required by

the residual clause both denies fair notice and invites arbitrary enforcement by judges," and "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson,* 135 S. Ct. at 2557. Because the residual clause is "vague in all its applications," the Supreme Court overruled its prior decisions in *Sykes* and *James* that had upheld the clause's validity. *Id.* at 2562-63. Subsequently, the Supreme Court held that *Johnson*'s rule is substantive, and that it applies retroactively to cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1268 (2016).

### E. First § 2255 Successor Motion.

Less than one year after *Johnson* was decided, on May 13, 2016, Mr. Holder sought authorization from the Eighth Circuit to file a successive § 2255 motion. He argued that federal bank robbery under 18 U.S.C. § 2113(a) and (e) does not qualify as a categorical "crime of violence" within the meaning of § 924(c).

A divided panel of the Eighth Circuit denied this authorization. *Holder v. United States,* 836 F.3d 891 (8th Cir. 2016). The Court held that a conviction for armed bank robbery "meets the requirement to include as an element of use, attempted use, or threatened use of physical force against the person or property of another." *Id.* at 892.

Recognizing that Mr. Holder had presented an argument "sufficient to clear the low bar for obtaining permission to file" a successive motion, Judge Melloy

dissented and would have voted to grant the motion. *Id.* at 892 (Melloy, J., dissenting). Judge Melloy recognized the circuit split that had developed. The majority of circuits that applied *Johnson* had at least concluded that successive motions should be allowed on this issue.  Judge Melloy also noted that "while it is not at this point clear how the combined offense of § 2113(a) and (e) might be committed in a manner not involving knowing or intentional intimidation, I do not view our role in approving or denying applications to file successive § 2255 motions to require resolution of such questions." *Id.* at 894.

**F.**     ***United States v. Davis.***

Earlier this year, in *United States v. Davis*, the Supreme Court held, unequivocally, that the residual clause in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague.  Mr. Holder's motion is predicated on the new rule established by this decision.

In *Davis*, the government conceded that if § 924(c)(3)(B) required the categorical approach, under which the Court had struck down for vagueness the similarly worded residual clauses of the Armed Career Criminal Act and 18 U.S.C. § 16(b), then the residual clause of § 924(c) was also void for vagueness. *See also Sessions v. Dimaya*, 138 S. Ct. 1204, 1216 (2018); *Johnson*, 135 S. Ct. at 2558-2559. However, the government argued that the Court should abandon the long-standing categorical approach as to § 924(c)(3)(B) and instead adopt a case-

10

specific approach looking to the defendant's actual conduct in the predicate offense. *Davis*, 139 S. Ct. 2319.

The Supreme Court rejected the government's argument. Looking first to the text of § 924(c)(3)(B), the Court found that "the statutory text commands the categorical approach." *Id*. at 2328. Following its reasoning and holding in *Dimaya*, the Court concluded that both § 16(b) and § 924(c)(3)(B) require the categorical approach. It noted that the nearly identical language in the two statues indicated a congressional intent that the statutes should be interpreted the same. *Id.* at 2330. The Court also rejected the government's argument that the categorical approach should be abandoned under the canon of constitutional avoidance. *Id.* at 2332-33. That principle was inapplicable, the Court found, because it would expand, rather than narrow, the reach of a criminal statute. *Id.* at 2332.

Ultimately, after careful consideration, the Court found no reason to abandon the categorical approach in assessing the constitutionality of § 924(c)(3)(B). *Id*. at 2333-2336. The Court then held that, under the categorical approach, § 924(c)(3)(B) was unconstitutionally vague. *Id*. at 2336. This holding invalidates Mr. Holder's § 924(c) conviction.

## ARGUMENT

**I.    In light of *Davis,* Mr. Holder's § 924(c) conviction cannot be sustained because federal bank robbery under § 2113(a) and (e) does not qualify as a "crime of violence."**

11

Mr. Holder's conviction for using or carrying a firearm during and in relation to a "crime of violence" is void because the "crime of violence" element cannot be satisfied here. After *Davis,* the predicate offense of bank robbery cannot, as a matter of law, qualify as a "crime of violence" for purposes of § 924(c). As discussed more fully below, federal bank robbery under 18 U.S.C. § 2113(a) categorically fails to qualify as a predicate "crime of violence" under § 924(c). It does not meet the definition of the elements clause and the unconstitutional residual clause no longer may define a "crime of violence."

A. **Section 924(c)'s residual clause is unconstitutionally void for vagueness.**

Section 924(c) defines "crime of violence" in the following two ways:

(3)    For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The first clause, § 924(c)(3)(A), is the elements clause. The other, § 924(c)(3)(B), is the residual clause.

The Supreme Court in *Davis* found § 924(c)(3)(B) unconstitutional and void, just as it had invalidated similar residual clauses in *Johnson* and *Dimaya*. The Court first determined that the categorical approach applies to analyzing any

predicate crime under § 924(c). This approach, the Court had previously explained, requires the court "to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch,* 136 S. Ct. at 1262. "The 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows." *Id.* (quoting *Johnson,* 135 S. Ct. at 2557).

In *Johnson,* the Court concluded that the constitutional guarantee of due process could not tolerate "condemn[ing] someone to prison for 15 years to life" based upon "so shapeless a provision." *Johnson,* 135 S. Ct. at 2560. In *Davis,* the Court held that imposition of mandatory penalties under § 924(c), too, risks offending due process and the separation of powers. *Davis*, 139 S. Ct. at 2333 ("[I]t's *impossible* to say that Congress surely intended that result . . . . Respect for due process and the separation of powers suggests a court may not, in order to save Congress the trouble of having to write a new law, construe a criminal statute to penalize conduct it does not clearly proscribe.").

The *Davis* Court noted that *Johnson* and *Dimaya* taught that "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Davis*, 139 S. Ct. at 2326. It recognized that § 924(c) had long been understood to require the

categorical approach and declined to abandon that approach in favor of a case-specific one. *Id.* at 2326-27.

The Court also looked to the history and congressional intent behind the statute. It determined that Congress acted with the understanding that § 924(c) would be governed by the categorical approach. *Id.* at 2331. Also, the Court highlighted the fact that Congress amended § 924(c) in 1984 to narrow its application only to "crimes of violence" rather than "*any* federal felony." *Id.* A "case-specific reading would go a long way toward nullifying that limitation." *Id.*

As a last ditch effort, the government argued the canon of constitutional avoidance to save the statute from being found unconstitutional. The Supreme Court rejected that approach as well. *Id.* at 2332. Even if it were possible to read the statute to require a case-specific approach, the Court explained, doing so would "expand a criminal statute's scope" and "risk offending the very same due process and separation-of-powers principles on which the vagueness doctrine itself rests." *Id.* at 2333. The Court thus declared § 924(c)(3)(B) unconstitutionally vague.

Due process cannot tolerate imposing a conviction on someone for an offense so vaguely defined, particularly when – as in Mr. Holder's case – that offense carries a potential death sentence. Mr. Holder was convicted under 18 U.S.C. § 924(c). Section 924(c)'s residual clause cannot be used to support a conviction under that statute. Mr. Holder's conviction under § 924(c) – and the

death sentence he received for it – therefore must be overturned if that conviction turns on a predicate determination that the bank robbery with which he was charged in Count 1, under 18 U.S.C. § 2113(a), is a "crime of violence" only under the residual clause. He also is entitled to a full resentencing, just like the defendants in *Davis*. *See id.* at 2336 ("the government conceded that, if § 924(c)(3)(B) is held to be vague, then the defendants are entitled to a full resentencing").

**B.  Federal bank robbery under 18 U.S.C. § 2113(a) categorically fails to qualify as a "crime of violence" under the elements clause because § 2113(a) is indivisible and it may be committed merely through "extortion" or "intimidation."**

Mr. Holder's conviction may only stand if the underlying crime, bank robbery, qualifies as a crime of violence under the elements clause of § 924(c)(3)(A). To determine whether the statute satisfies the elements clause, the court must examine the text of the statute. Since the statute is indivisible, as discussed herein, the court must apply the categorical approach to determine whether it is possible to commit the crime as defined without intentionally using, threatening, or attempting violent force. This approach reveals that "force and violence," "intimidation," and "extortion" are simply means by which the singular offense of bank robbery may be committed. And these means include both extortion, which undeniably fails to require physical force, and intimidation, which

can be committed without the intentional use, attempted use, or threatened use of violent physical force. Thus, § 2113(a) is not a categorical crime of violence.

### 1. Section 2113(a) is indivisible and requires the categorical approach.

The application of the categorical approach depends on the divisibility of the statute. If a statute is divisible, the court applies a modified categorical approach to its analysis. *See Descamps v. United States*, 570 U.S. 254, 263 (2013) ("[T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute."). If the statute is indivisible, the court applies the categorical approach. *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (noting that the categorical approach applies in a straightforward manner to indivisible statutes because they only include a single set of elements for one crime).

A divisible statute effectively defines multiple crimes, whereas an indivisible statute is defined by a single set of elements that comprise one crime. *Mathis*, 136 S. Ct. at 2248-49; *Descamps*, 570 U.S. at 262. Thus, if a statute lists alternative elements that create alternative versions of the crime, it is divisible. *Descamps,* 570 U.S. at 262. However, if the statute simply identifies "means," it is indivisible. "Means" are various factual ways in which to satisfy a single element of the same crime.

The Supreme Court in *Mathis* described the process for determining a statute's divisibility. If the statute on its face carries different punishments for the alternatives, then they must be viewed as elements, creating distinct crimes. *Mathis*, 136 S. Ct. at 2256. If it includes a list of "illustrative examples" then the statute simply enumerates different means by which the single crime may be accomplished. *Id*. Finally, if the statute identifies items that must be charged and others that may be charged, the items that must be charged are elements, and the others are means. *Id.*

Federal bank robbery under 18 U.S.C. § 2113(a) is an indivisible offense. Section 2113(a) defines bank robbery to apply to anyone who

> *by force and violence* or *by intimidation,* takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain *by extortion* any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association.

18 U.S.C. § 2113(a) (emphasis added). The elements of § 2113(a) are: (1) a taking or attempted taking of some property of value (2) from another person or bank (3) by the unlawful means of either force and violence, intimidation, or extortion. The language of the statute clearly indicates that these three items are the "elements" that must be proven, and that the third element may be committed by any one of three possible means.

Both the statutory text and its legislative history confirm that § 2113(a) is indivisible. The wording and organization of the statute indicate that "force and violence," "intimidation," and "extortion" are simply the unlawful means by which a person might commit the singular offense of federal bank robbery. 18 U.S.C. § 2113(a). Further, the statute has two distinct clauses. The first clause covers gaining possession of an item, and the second covers entry with intent to commit a crime. Each clause begins with "[w]hoever" and ends with a semicolon, describing conduct that is sufficient to satisfy the offense of bank robbery. Each clause separately describes bank robbery. The same punishment is provided for the entire section of the statute.

The legislative history, too, indicates that bank robbery under § 2113(a) is a single, indivisible crime. In 1986, when Congress amended the statute, it added "extortion" in the same clause as the existing text listing "force and violence" and "intimidation" as ways the crime might be committed. 100 Stat. 3616 (Nov. 10, 1986). This amendment was intended to clarify that the existing crime of bank robbery could be accomplished by means of extortionate takings, even where the perpetrator was not physically inside the bank. *See United States v. Watson*, No. 16-15457 (Sep. 19, 2016) (Amicus Brief by the Ninth Cir. Fed. Pub. & Community Defenders and the Nat'l Ass'n of Crim. Def. Law.) (citing H.R. Rep. No. 99-797 Sec. 51 & n.16 (1986)).

Congress could have created a separate crime for bank extortion, but it chose not to do so. Section 2113(a) thus is an indivisible statute that may be accomplished by means of extortion, among other means.

Federal model criminal jury instructions also indicate that extortion is a means rather than an element. The Eighth Circuit's model criminal jury instructions provide no guidance on this issue because the instructions for § 2113(a) inexplicably omit any reference to extortion. *See* Fed. Crim. Jury Instr. 8th Cir., 620 (2017). On the other hand, the Seventh Circuit's model criminal jury instruction explicitly states that this statute "includes a *means* of violation for whoever 'obtains or attempts to obtain by extortion.'" Fed. Crim. Jury Instr. 7th Cir., 590 (2012) (emphasis added). The model instruction also provides: "[i]f a defendant is charged with this *means* of violating the statute, the instruction should be adapted accordingly." *Id.* (emphasis added).

The Third Circuit, in *United States v. Askari,* considered § 2113(a) and acknowledged that "extortion" plays the same role in the statute as "force and violence" and "intimidation." 140 F.3d 536, 548 ("Bank robbery, the underlying offense here, consists of taking, or attempting to take, anything of value, by force and violence, by intimidation, or by extortion."). The Tenth Circuit has also acknowledged that § 2113(a) may be construed as an indivisible statute including extortion as one of several means. *See United States v. Deiter*. 890 F.3d 1203,

1211 n.5 (10th Cir. 2018).  Though the appellant there had not made the argument below, and it was not properly before the court to address, the Tenth Circuit noted in a lengthy footnote that – at the very least – a "conundrum" between elements and means exists within § 2113(a). *Id.*

Thus, § 2113(a) is an indivisible statute that demands the categorical approach.  And, as explained below, application of the categorical approach shows that federal bank robbery under § 2113(a) cannot be a "crime of violence" under the elements clause of § 924(c).

**2. Federal bank robbery does not qualify as a crime of violence under the elements clause, § 924(c)(3)(A).**

In applying the categorical approach to bank robbery under § 2113(a), this Court must "look only to the statutory definitions – i.e., the elements – of [the offense] and not to the particular facts underlying [it]." *Descamps,* 133 S. Ct. at 2283. In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct it covers, including the most innocent conduct, matches or is narrower than the "crime of violence" definition. *See, e.g., United States v. Schneider*, 905 F.3d 1088, 1093 (8th Cir. 2018); *United States v. Roblero-Ramirez*, 716 F.3d 1122, 1125 (8th Cir. 2013); *Torres-Villalobos,* 487 F.3d at 616; *see also United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a

"crime of violence," then the statute categorically fails to qualify as a "crime of violence."

An offense will qualify as a "crime of violence" under the elements clause only if it has, as an element, the use, attempted use, or threatened use of "physical force" against another person. 18 U.S.C. § 924(c)(3)(A). "Physical force," in turn, has two additional requirements. First, "physical force" means *violent* force – that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010). And second, the use of force "must be intentional, not just reckless or negligent." *United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir. 2015); *see also Leocal v. Ashcroft,* 543 U.S. 1, 12-13 (2004).

Applying these standards to Mr. Holder's case, his conviction for violating § 924(c) and the death sentence he received for that conviction under § 924(j) must be vacated. Federal bank robbery under 18 U.S.C. § 2113(a) categorically fails to qualify as a crime of violence under § 924(c)'s elements clause.

> a. **"Extortion" under the federal bank robbery statute does not require the use or threatened use of *violent physical force* or an *intentional* use or threat of violent force.**

Section 2113(a) defines bank robbery to apply to anyone who

> by force and violence or by intimidation*,* takes, or attempts to take, from the person or presence of another, *or* obtains or attempts to obtain *by extortion* any property or money or any other thing of value

belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association.

18 U.S.C. § 2113(a) (emphasis added). The statute includes "by extortion" as a means to accomplish a § 2113(a) bank robbery. Because § 2113(a) may be violated by "extortion" alone, it cannot satisfy § 924(c)'s elements clause. "Extortion" does not require the use, attempted use, or threatened use of "violent force." Since extortion does not require force, the element setting out the possible means to commit bank robbery does not require force and the crime of bank robbery under § 2113(a) cannot be a "crime of violence" under the elements clause.

Federal courts have recognized that "extortion" does not necessitate any use, let alone the intentional use, of physical force that is required by a categorical crime of violence. *See Askari.* 140 F.3d at 548; *see also United States v. Valdez*, 158 F.3d 1140, 1143 n.4 (10th Cir. 1998) (noting that an "individual may be able to commit a bank robbery under the language of 18 U.S.C. § 2113(a) 'by extortion' without the threat of violence"). For example, extortion could be accomplished through the fear of financial or reputational loss. *See Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 322 (S.D.N.Y. Mar. 31, 2016) (including threat of injury to property or reputation within extortion). Also, a defendant may accomplish extortion through a ransom, which the Supreme Court has stated does

22

not require violent physical force as required under § 924(c). *See, e.g. Torres v. Lynch*, 136 S. Ct. 1619, 1629 (2016) ("[t]he 'crime of violence' provision [of 18 U.S.C. § 16] would not pick up demanding a ransom for kidnapping").

Thus, extortion does not require the use, threatened use, or attempted use of physical force. And because extortion is one "means" of committing the indivisible crime of federal bank robbery, 18 U.S.C. § 2113(a) cannot qualify as a crime of violence under § 924(c)(3)(A).

### b. "Intimidation" under the federal bank robbery statute does not require the use or threatened use of *violent* physical force, nor does it require that any force be intentional.

A second means by which federal bank robbery may be committed under § 2113(a) is through "intimidation." This means, too, precludes § 2113(a) from satisfying § 924(c)'s elements clause. "Intimidation" does not require the use, attempted use, or threatened use of either violent or intentional physical force.

"Intimidation" under the federal bank robbery statute occurs when "an ordinary person in the [victim's position] could reasonably infer a threat of *bodily harm* from the bank robber's words and actions." *United States v. Picker,* 616 F.3d 821, 825 (8th Cir. 2010); *see also Yackel,* 320 F.3d at 824. But even assuming that the act of placing another in fear of bodily harm constitutes a threat of physical injury, federal bank robbery still fails to qualify as a "crime of violence" under § 924(c)'s elements clause because it does not require the use or threatened use of

*violent* force against another, nor does it require that any force be intentional.[1]

Indeed, the Eighth Circuit has squarely acknowledged that the intimidation element

may be satisfied without any showing of the defendant's intent to intimidate. *See*

*Yackel,* 320 F.3d at 824.

The Fourth Circuit's decision in *Torres-Miguel* is directly on point. In that

case, the Fourth Circuit unequivocally held that the threat of any physical injury,

even "serious bodily injury or death," does not *necessarily* require the use or

threatened use of physical force, let alone violent force. 701 F.3d at 168.

The issue in *Torres-Miguel* was whether the defendant's prior conviction for

the California crime of willfully threatening to commit a crime which "will result

in death or great bodily injury to another" qualified as a violent felony under an

elements clause materially indistinguishable from that in § 924(c). *Id.* (citing Cal.

Penal Code § 422(a)). The court held, without qualification, that "[a]n offense that

*results* in physical injury, but does not involve the use or threatened use of force,

simply does not meet the . . . definition of crime of violence." *Id.* "[A] crime may

---

[1] The government's recent concession with respect to Maryland common-law robbery is instructive here. *See* Br. of Appellee at 73, *United States v. Louis Martin,* Case No. 14-4779 (4th Cir. Sept. 15, 2015). The Maryland provision at issue in *Martin* defines robbery in the same manner as does § 2113(a), providing for alternative elements of force or intimidation. If Maryland robbery does not qualify as a "crime of violence" under § 924(c)'s elements clause, then neither does federal bank robbery under § 2113(a).

*result* in death or serious injury," the court explained, "without involving *use* of force." *Id.* (emphasis added).

Continuing to consider decisions from various federal courts of appeals, the *Torres-Miguel* court identified many possible ways in which physical injury – even death – may result without the use or threatened use of "violent force." *Id.* at 168-69 (collecting cases). "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Id.* (citing *United States v. Cruz-Rodriguez,* 625 F.3d 274, 276 (5th Cir. 2010)).

*Torres-Miguel* also relied on the Second Circuit's decision that a Connecticut conviction for third-degree assault could not qualify as a "crime of violence" under the elements clause. *Chrzanoski v. Ashcroft,* 327 F.3d 188, 194 (2d Cir. 2003). The Connecticut statute "required the state to prove that the defendant had intentionally caused physical injury." *Id.* at 193. Nevertheless, because the statute required only *causation* of an injury, it failed to require the use or threatened use of physical force. *Id.* at 194.

"An individual could be convicted of intentional assault in the third degree," said the Second Circuit, "for an injury caused not by physical force, but by guile, deception, or even deliberate omission." *Id.* at 195. The court conceived of "numerous examples of intentionally causing physical injury without the use of

25

force, such as a doctor who deliberately withholds vital medicine from a sick patient," or someone who causes physical impairment by putting a tranquilizer in the victim's drink. *Id.*

The Tenth Circuit, too, provided support for the *Torres-Miguel* court's decision. *United States v. Perez-Vargas,* 414 F.3d 1282 (10th Cir. 2005). That case involved a Colorado third-degree assault statute that required proof of an act causing bodily injury by means of a deadly weapon. But it did not, the Tenth Circuit found, necessarily include the use or threatened use of physical force, and therefore did not define a crime of violence under the elements clause. *Id.* at 1287. As examples of Colorado third-degree assault that would not use or threaten the use of physical force, the Tenth Circuit identified intentionally placing a barrier in front of a car, causing an accident, or intentionally exposing someone to hazardous chemicals. *Id.* at 1286.

The reasoning of *Torres-Miguel* and the many cases on which it relied applies equally to federal bank robbery under § 2113(a). That crime can be accomplished by intimidation, which includes simply putting another in fear of bodily harm. The federal bank robbery statute therefore fails to require the use of physical force, and certainly not the "violent force" the Supreme Court has identified as a prerequisite to constitutional application of the elements clause. *See*

*United States v. Rice,* 813 F.3d 704, 707 (8th Cir. 2016) (Kelly, J., dissenting) (citing *Johnson v. United States,* 559 U.S. at 139).

Indeed, a defendant could accomplish a bank robbery by placing someone in fear of bodily harm by, for example, threatening to poison a bank teller, threatening to release hazardous chemicals in the bank, or locking a bank employee in a vault without food or water. The cases cited above hold that these types of acts do not constitute "violent force."

Furthermore, "intimidation" as defined by the federal bank robbery statute cannot satisfy the elements clause because it does not require an intentional use or threatened use of violent force. *See Torres-Villalobos,* 487 F.3d at 616-17 (acknowledging that§ 16(b)'s identical elements clause requires that the offense involve the intentional use or threatened use of violent force); *see also United States v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015) (holding that California robbery statute did not qualify as a "violent felony" under the ACCA's elements clause because it did not require the intentional use or threat of force).

It is well settled that the "intimidation" element of § 2113(a) is missing this necessary intentional mens rea. "Intimidation" under the federal bank robbery statute is satisfied "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [ victim's] position reasonably

could infer a threat of bodily harm from the defendant's acts." *United States v. Woodrup*, 86 F.3d 359, 364 (4th Cir. 1996).

For example, in *United States v. Yackel*, the Eighth Circuit upheld the defendant's bank robbery conviction under § 2113(a) even though there was no evidence he intended to put the teller in fear of injury. *Yackel,* 320 F.3d at 821. The defendant never made any sort of physical movement towards the teller, nor did he display any sort of weapon. In fact, the evidence failed to establish that he claimed to have a weapon, or even gave any appearance of possessing a weapon. *Id*. The Eighth Circuit nevertheless found the "intimidation" element satisfied, making clear that the element is assessed from the perspective of the teller, not the defendant, and thus requires neither the use or threat of violent force nor the intentional use or threat of force. *See id.; see also Kelley,* 412 F.3d at 1244, citing *Yackel*("Whether a particular act constitutes intimidation is viewed objectively, ... and a defendant can be convicted under section 2113(a) even if he did not intend for an act to be intimidating.").

A defendant thus may be found guilty of federal bank robbery without any evidence that he intended to put another in fear of injury. All the government must prove is that the victim reasonably feared injury from the defendant's actions, whether or not the defendant intended to create that fear.

Thus, because "the full range of conduct" covered by § 2113(a) does not require "violent force," it categorically cannot qualify as a "crime of violence" under § 924(c)(3)'s elements clause. *See Torres-Miguel,* 701 F.3d at 171. It makes no difference whether the possibility of violating the bank robbery statute without the use or threat of violent force may be slim. Because that possibility exists, this Court cannot, as a matter of law, find that federal bank robbery is a "crime of violence."

### c. The fact that Mr. Holder was convicted under § 2113(e) does not satisfy § 924(c)'s elements clause.

While Mr. Holder also was charged under § 2113(e), which exposes a defendant to a death sentence "if a death results" in the course of committing or fleeing a bank robbery, this provision does not satisfy the elements clause. Section 2113(e) requires a *result* – someone's death – but contains no element specifying that this death must be caused by the defendant's intentional use, threatened use, or attempted use of violent physical force.

## II. Mr. Holder is entitled to relief under 28 U.S.C. § 2255 because his claim under *Davis* is cognizable, timely, and satisfies the successive petition requirements of § 2255(h)(2).

### A. Mr. Holder's claim is cognizable under § 2255(a).

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. Mr. Holder's conviction violates

the Due Process Clause of the Fifth Amendment, violates federal law, and exceeds this Court's jurisdiction. This Court therefore should grant him relief under § 2255(a).

First, for all the reasons explained above, Mr. Holder's conviction on Count 2, the § 924(c) charge, violates due process because it depended on the unconstitutionally vague residual clause.

Second, as further explained above, federal bank robbery under 18 U.S.C. § 2113(a) categorically cannot satisfy § 924(c)'s elements clause. Mr. Holder's indictment therefore failed to state an offense under § 924(c), and Mr. Holder now stands convicted of an offense that is no longer criminal. This means that his conviction violates the laws of the United States and results in a fundamental miscarriage of justice. This is precisely the type of error that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255").

Third, Mr. Holder's conviction exceeds this Court's jurisdiction because not only did the indictment fail to state a § 924(c) offense, but it affirmatively alleged conduct that is outside that statute's reach. That is, Count 2 of the indictment

alleged that Mr. Holder used or carried a firearm during or in relation to bank robbery under 18 U.S.C. § 2113(a). But, as discussed above, under the categorical approach, federal bank robbery under § 2113(a) can never qualify as a "crime of violence" for purposes of § 924(c). In turn, a § 924(c) conviction can never be sustained based on the underlying offense of bank robbery pursuant to § 2113(a), no matter what the facts are.

Simply put, Count 2 altogether fails to state a § 924(c) offense. Mr. Holder's conviction on Count 2 therefore is a legal nullity that was entered in excess of this Court's jurisdiction and must be vacated. *See United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute"); *United States v. Barboa,* 777 F.3d 1420, 1423 n.3 (10th Cir. 1985).

**B.      Mr. Holder's motion for relief is timely.**

Section 2255(f) requires that § 2255 motions be filed within a one-year limitations period. That period runs from the latest applicable triggering event. 28 U.S.C. § 2255(f). Among these triggers is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.,* § 2255(f)(3).

The Supreme Court decided *Davis* on June 24, 2019. Mr. Holder has filed this application within one year of that date. Just like *Johnson* before it, *Davis* has been applied by the Circuit Courts as a new rule of constitutional law retroactively available. This motion therefore is timely filed.

**C.      Mr. Holder's successive § 2255 motion satisfies the requirements of 28 U.S.C. § 2255(h)(2) because *Davis* announced a new, previously unavailable rule of constitutional law, and the Circuit Courts have consistently applied *Davis* as a new retroactively available rule of constitutional law.**

Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions. Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals. See 28 U.S.C. § 2255(h)(2). The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.; see also* 28 U.S.C. § 2244(b)(3)(C).

Mr. Holder filed an application for successor authorization on November 18, 2019. Because he has made a *prima facie* showing that he has satisfied § 2255(h)(2), the Eighth Circuit's certification should be forthcoming. *See In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019) (authorizing successive § 2255 petitions after Davis even when the government argued the predicate federal bank robbery offenses were crimes of violence under § 924(c)(3)(A)).

Mr. Holder can make out a *prima facie* showing that his motion meets all the requirements of § 2255(h)(2). *See generally Johnson v. United States*, 720 F.3d 720 (8th Cir. 2013) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)) ("a prima facie showing in this context is 'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court'").

The recent Supreme Court decision in *Davis* created a new rule of constitutional law by extending the decision in *Johnson* to 18 U.S.C. § 924(c). Several circuits have already agreed that *Davis* announced a new, retroactive rule, as it extends *Johnson* to reach a different statutory provision. *See, e.g., United States v. Reece*, 2019 WL 4252238, at *4 (5th Cir. Sept. 9, 2019), as revised (Sept. 30, 2019) (holding that *Davis* created a new rule of constitutional law applicable retroactively); *United States v. Bowen*, 936 F.3d 1091, 1097–98 (10th Cir. 2019) ("We first conclude that the Supreme Court's ruling in *Davis* that § 924(c)(3)'s residual clause is void for vagueness is a new constitutional rule that is retroactive on collateral review."); *In re Hammoud*, 931 F.3d 1032, 1040 (11th Cir. 2019) (finding that *Davis* "announced a new substantive rule of constitutional law in its own right, separate and apart from (albeit primarily based on) *Johnson* and *Dimaya*. Thus, Hammoud's present claim is a new *Davis* claim, not a *Johnson* or *Dimaya* claim"); *In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019) (finding *Davis* to satisfy the requirements for opening the door to a successive § 2255 petition).

*Davis* thus applies retroactively to Mr. Holder's convictions separately from his previous *Johnson* application.

Mr. Holder's current argument was also previously unavailable before *Davis* because § 924(c)(3)(B) was still enforced. While § 924(c) was constitutionally valid, the validity of Mr. Holder's § 924(c) conviction could not have been argued because the residual clause language included his underlying conviction of federal bank robbery. Mr. Holder could not have previously made the argument that his conviction pursuant to § 2113(a) and (e) was not a categorical "crime of violence" because it was inarguable that the residual definition under §924(c)(3)(B) included bank robbery. Even if Mr. Holder had argued that bank robbery was not a "crime of violence" under the elements clause, the court would have upheld the conviction under the residual clause. With the residual clause now void, Mr. Holder can pursue this previously unavailable argument that bank robbery is not a "crime of violence" under §924(c).

## III. Mr. Holder's invalid § 924(c) conviction also invalidates his death sentence on Count 1, the bank robbery charge.

Mr. Holder was convicted of both bank robbery – Count 1 -- and violating § 924(c) -- Count 2. The jury returned a separate death sentence for each count. After *Davis,* Mr. Holder's death sentence on Count 2 must fall along with his conviction for that non-existent crime. But that is not all. The invalidation of Mr. Holder's § 924(c) conviction requires that he be resentenced on Count 1 as well.

When a defendant has been convicted and sentenced on multiple charged offenses, one of which subsequently is invalidated, he must be resentenced on the valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the invalid offense. *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986). The Eighth Circuit has explained that "the critical issue" in this inquiry "is whether the sentence imposed [on the valid count] might have been different if the sentencing judge had known at the time of the sentencing that . . . conviction [on another count] was invalid." *James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973) (per curiam) (*quoted in United States v. Starr,* 503 F. App'x 517, 518 (8th Cir. 2015) (per curiam)). Allowing Mr. Holder's death sentence on Count 1 to stand following the necessary vacatur of his death sentence on Count 2 would violate the Eighth Amendment's protection against cruel and unusual punishment. This is no less true in the case of jury sentencing, and the record in Mr. Holder's case cannot show that the inclusion of the unconstitutional § 924(c) count did not influence the jury's decision to sentence him to death.

Mr. Holder's jury was allowed to consider not just that he participated in a bank robbery in which a death resulted, but that this bank robbery was a "crime of violence." The jury was told that this "crime of violence" was so egregious that using a gun in connection with it amounted to a second federal felony that

qualified for a second potential death sentence. And yet, that so-called "crime of violence" was not a crime at all, and should never have been presented to the jury at all, during either stage of Mr. Holder's trial.

Even worse, under the sentencing provision attached to § 924(c), 18 U.S.C. § 924(j), the jury was directed to consider whether Mr. Holder committed "murder," and acted "with malice aforethought." That state of mind is widely understood by the general public to involve evil, depravity, and wanton disregard for the value of human life.[2]

The prejudicial impact on the jury of the § 924(c) charge is plainly demonstrated by the result of co-defendant Billie Allen's penalty phase. Though the evidence at his trial, as at Mr. Holder's, proved that Allen alone shot and killed the victim in this case, he received a death sentence only on the § 924(c) count, and a life sentence on the bank robbery count. Whatever the differences between

---

[2] Merriam-Webster's online dictionary provides the following "legal definition of malice:

> a: the intention or desire to cause harm . . . to another through an unlawful or wrongful act without justification or excuse;
> b: wanton disregard for the rights of others or for the value of human life;
> c: an improper or evil motive or purpose . . . ;
> d: actual malice.

http://www.merriam-webster.com/dictionary/malice#legalDictioary, last visited on November 17, 2019.

aggravation and mitigation might have been at the two trials, Allen's jury concluded that using a firearm in connection with a "crime of violence," resulting in "murder" was a more severe crime than the bank robbery alone, and thus worthy of the ultimate punishment. Given that the trial evidence proved Mr. Holder did not, himself, kill Richard Heflin, there is at least a reasonable probability that the jury's sentencing verdict would have been different, had it been tasked only with determining Mr. Holder's sentence for a bank robbery in which a death resulted.

What is more, given the unparalleled need for reliability in capital sentencing, allowing Mr. Holder's death sentence on Count 1 to stand despite the jury's exposure to the invalid count and its intensely prejudicial elements would implicate the Eighth Amendment. The Supreme Court's decision in *Johnson v. Mississippi,* 486 U.S. 576 (1988), provides an instructive analogy. There, the Court held that when a prior conviction used as aggravation in support of a death sentence has subsequently been overturned, the defendant's death sentence violates the Eighth Amendment. The Court explained that "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Id.* at 584 (citations and internal quotations omitted).

Because the petitioner's prior conviction in *Johnson v. Mississippi* was invalid, the Court deemed it "apparent that the [prior] conviction provided no legitimate support for the death sentence imposed on petitioner." *Id.* at 585. Equally apparent, the Court said, was "that the use of that conviction in the sentencing hearing was prejudicial." *Id.*

And while the prosecutor had repeatedly pointed to the prior conviction in his closing argument, the Supreme Court said the now-voided conviction's use as aggravation would have violated the Eighth Amendment no matter what. "Even without express argument, there would be a possibility that the jury's belief the petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* (quoting *Gardner v. Florida,* 430 U.S. 349, 359 (1977)).

The same principles apply here. The unconstitutional § 924(c) conviction had a profoundly prejudicial impact on Mr. Holder's case as a whole, and undermines confidence in his death sentence on Count 1 as well.

Indeed, Mr. Holder likely was prejudiced even before his case ever reached the jury. When the Department of Justice considered whether to authorize the death penalty against Mr. Holder, it was presented with an indictment alleging not one, but two capital offenses, including a § 924(c) count. The Department's capital case

review process must have been skewed by the presence of the unconstitutional charge just as the jury's sentencing decision was skewed in *Johnson v. Mississippi.*

Finally, equitable considerations warrant resentencing as well. As noted above, the evidence at both Mr. Holder's trial and that of Billie Allen overwhelmingly proved that Allen alone shot and killed bank security guard Richard Heflin. Yet Billie Allen received a life sentence for his conviction on Count 1, the bank robbery count, and was sentenced to death only on Count 2, the § 924(c) count.

Thus, if this Court vacates only the death sentence associated with Mr. Holder's illegal § 924(c) conviction, he will remain sentenced to death on a charge for which his co-defendant, the undisputed killer in the case, was sentenced to life imprisonment. Should Billie Allen, too, receive relief for his invalid § 924(c) conviction, he would be entitled to leave federal death row. Mr. Holder, however, would not.[3] This Court should vacate Mr. Holder's sentence in its entirety and order that he be resentenced on Count 1 alone.

---

[3] The Allen and Holder cases were the first federal death penalty prosecutions brought in the Eastern District of Missouri. Before the co-defendants' separate trials began, the government apparently decided that if Allen – who was tried first – received a life sentence, it would take the death penalty off the table in Mr. Holder's case.

**CONCLUSION**

For all the reasons set forth above, Mr. Holder respectfully asks this Court to vacate his conviction and sentence on Count 2 and order that he be resentenced for his remaining conviction.

Dated November ___, 2019

Respectfully Submitted,

LISA G. PETERS
FEDERAL DEFENDER

Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114
Counsel for Norris G. Holder, Jr.

# CERTIFICATE OF SERVICE

I hereby certify that on November ___, 2019, the foregoing Motion Under 28 U.S.C. § 2255 for the Eastern District of Missouri.

I further certify that on the same date, the foregoing Motion was served on the following by electronic mail to:

Cristian Smith, Assistant United States Attorney
Cris.Smith@usdoj.gov

Joseph Landolt, Assistant United States Attorney
Josheph.landolt@usdoj.gov

Office of the United States Attorney, Eastern District of Missouri
Usamoe.crimdock@usdoj.gov

And by depositing the above document in the United States Postal Service, first class postage prepaid to Mr. Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, Thomas Eagleton U.S. Courthouse, 111 S. 10th Street, 20th Floor, St. Louis, MO 63102.

/s/Scott W. Braden
Scott W. Braden